IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ANTHONY JAMES-MEYERS, | |
| Plaintiff, | |
| v. | Civil Action No.: PX-23-3355 |
| OFC. QUAYNAR, | |
| Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Anthony James-Meyers, an inmate at the Maryland Correctional Training Center ("MCTC") in Hagerstown, Maryland, filed this action pursuant to 42 U.S.C. § 1983 against Defendant Officer Quaynar. ECF No. 1. Officer Quaynar moves to dismiss the Complaint or alternatively for summary judgment to be granted in his favor. ECF No. 14. Upon review of the record, no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons stated below, Officer Quaynar's motion, construed one for summary judgment, will be granted.[1]

**I.   Background**

James-Meyers sues Officer Quaynar for allegedly using excessive force against him during medication rounds. ECF No. 1. Specifically, James-Meyers alleges that on August 25, 2023 "around 6:45 p.m. – 6:50 p.m.," Officer Quaynar "began to kick & [sic] punch my left hand as well as try to slam close [sic] the slot on me multiple times." ECF No. 1-1 at 4. Video footage of the incident, ECF No. 14-4, corroborates that on this date and time, Officer Quaynar and Nurse

---

[1] After the Court advised James-Meyers of his right to respond to the dispositive motion, *see Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), James-Meyers filed an interlocutory appeal with the Fourth Circuit. ECF No. 16. The Fourth Circuit dismissed the appeal, emphasizing that James-Meyers erroneously noted his appeal in lieu of responding to the Defendant's motion. ECF No. 20-2 at 2. After the appellate court mandate issued, James-Meyers filed his response to the pending motion. ECF No. 22. Even though technically the response is untimely, clearly James-Meyers did not understand the procedural posture of the case. To give him the opportunity to be heard on the merits, the Court will consider his response. *See Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir.1989) (citing Haines v. Kerner, 404 U.S. 519 (1972).

Wallace approached James-Meyers' cell door to administer medication. ECF No. 14-4. The video also captures the following six-minute exchange. *Id.*

After Officer Quaynar unlocked the cell-door slot, Nurse Wallace placed medication in the slot. James-Meyers extended his arm and appeared to exchange words with Officer Quaynar. Officer Quaynar next raised his foot to tap James-Meyers' extended arm while the nurse continued down the tier. Also, in an apparent effort to get James-Meyers to withdraw his arm from the slot, Officer Quaynar touched, tapped, and held James-Meyers' outstretched arm for about a minute.

Officer Quaynar next walked away from James-Meyers' outstretched left arm and summoned other officers. As two other officers got within a few inches of James-Meyers' outstretched arm, James-Meyers pulled his arm back into the cell. Shortly after, Officer Quaynar joined the two officers. For about ten seconds, Officer Quaynar's body partially blocked the camera's view of the cell door slot; but during that time, no officer made any sudden or violent movements.

Officer Quaynar next walked away, and James-Meyers extended both arms through the door slot and began talking with the two remaining officers, gesticulating with his hands.[2] Shortly after, James-Meyers withdrew his arms, and one officer closed the slot without incident.

A photograph taken of James-Meyers' left hand the next day showed no injury, save for a dime-sized area where an old abrasion appeared to be healing. ECF No. 14-3 at 23. Records also reflect that James-Meyers had been treated for pain to his *right* arm, wrist, and shoulder. ECF No. 14-5 at 2-10. This includes a medical visit that took place on August 30, 2023, in which James-

---

[2] James-Meyers asserts, without support, that other video cameras would have captured the incident from other angles. ECF No. 22 at 2. The submitted video footage captures the entirety of the tier and no other cameras are visible. ECF No. 14-4.

2

Meyers complained of a "staff assault" where his "right hand" was "slammed at the door" and he was treated for a right-hand cut. *Id.* at 2-3.

## II. Standard of Review

Officer Quaynar moves to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or for summary judgment to be granted in his favor. The Court retains broad discretion under Rule 12(d) to treat such a motion as one brought pursuant to Rule 56. *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)). The motion includes evidence beyond the Complaint, placing James-Meyers on notice that the Court could convert the motion to one for summary judgment. ECF No 15. Accordingly, the Court will reach the propriety of summary judgment. *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).

Under Rule 56(d) summary judgment is proper where "no genuine dispute of material fact exists" on any element of the claim such that the movant is entitled to judgment as a matter of law. When reviewing for summary judgment, the Court must construe the record "in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute

3

of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249-50.

With his standard in mind, the Court turns to Officer Quaynar's motion.[3]

### III.     Discussion

The Constitution's Eighth Amendment prohibition against cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). An officer violates an inmate's Eighth Amendment rights when he subjects the inmate to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The excessive force inquiry has two components. The first, "objective component asks whether the force applied was sufficiently serious to establish a cause of action." *Alexander v. Connor*, 105 F.4th 174, 182 (4th Cir. 2024) (quoting *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019)). Whether force was objectively reasonable turns on "the nature of the force used rather than the extent of any injuries suffered by the plaintiff and requires only a nontrivial use of force." *Id.* citing *Wilkins v. Gaddy*, 559 U.S. 34, 34, 39 (2010) (per curiam) (internal quotations omitted).

The second, subjective component requires the inmate show that the officer acted "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). Whether an officer "acted with wantonness" depends on "(1) the need for the application of force; (2) the relationship between the need and the

---

[3] Officer Quaynar asserts, without support, that James-Meyers sues him in his "official capacity," and so he is entitled to Eleventh Amendment immunity from suit. ECF No. 14-1 at 6. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). But clearly, James-Meyers sues Officer Quaynar for acts taken in the officer's individual capacity, ECF No. 1. Because officials are not immune from suit for acts taken in their individual capacities, *see Hafer v. Melo*, 502 U.S. 21, 22 (1991), the claim will not be resolved on immunity grounds.

4

amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

When viewing the record most favorably to James-Meyers, no rational trier of fact could conclude that Officer Quaynar applied "sufficiently serious" force to establish the first component of the Eighth Amendment analysis. *Alexander*, 105 F.4th at 182 (quoting *Brooks,* 924 F.3d at 112). At worst, Officer Quaynar gingerly raised his foot once to tap James-Meyers' outstretched arm. Officer Quaynar did not "kick" James-Meyers or the cell door slot at any point. When James-Meyers did not withdraw his arm, Officer Quaynar also touched, tapped and held James-Meyers' arm with his hand. Indeed, the force applied was so minimal that James-Meyers' arm barely moved in response. The contemporaneous photograph of Meyers' left hand showed no signs of recent or serious injury.

Moreover, medical records do not support any claimed force to James-Meyers' left hand or arm. The video footage indisputably shows that Officer Quaynar touched James-Meyers' *left* arm. The only contemporaneous medical records show that the next day, James-Meyers complained during a scheduled sick call of *right hand* numbness, which appears to have been a pre-existing problem. ECF No. 14-5 at 6 (documenting James-Meyers complaint "I feel numb to my r hand I was on baclofen on the old jail, since I got here I have to seen a doctor"). *See also id.* at 8-10 (August 1, 2023, encounter stemming from previous "alleged altercation" pain in right hand, shoulder and wrist). No records memorialize any medical visits associated with injury to James-Meyers' left hand or arm.

In sum, the entirety of the evidence, viewed most favorably to James-Meyers, cannot support an Eighth Amendment excessive force claim. Although using one's foot to tap an inmate's outstretched arm is likely not advisable, no rational juror could conclude that Officer Quaynar's encounter with James-Meyers constitutes an objectively serious use of force such that it amounts to cruel and unusual punishment. Summary judgment is thus granted in Officer Quaynar's favor.[4]

### IV. Conclusion

For the above stated reasons, Officer Quaynar's Motion to Dismiss or for Summary Judgment, construed as a motion for summary judgment, is GRANTED.

A separate Order follows.

| | |
|---|---|
| 3/5/25 | /S/ |
| Date | Paula Xinis<br>United States District Judge |

---

[4] Because the claim will not proceed, the Court denies as moot James-Meyers' request for appointment of counsel. ECF No. 22 at 2.